UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA-EASTERN DIVISION

| | |
|---|---|
| DANIEL FELIX, | Case No. ED CV 16-00173-AS |
| Plaintiff, | **MEMORANDUM OPINION AND** |
| v. | **ORDER OF REMAND** |
| NANCY A. BERRYHILL,[1] Acting Commissioner of Social Security, | |
| Defendant. | |

**PROCEEDINGS**

On January 29, 2016, Plaintiff filed a Complaint seeking review of the denial of his application for Supplemental Security Income. (Docket Entry No. 1). The parties have consented to proceed before the undersigned United States Magistrate Judge. (Docket Entry Nos. 11-12). On June 15, 2016, Defendant filed an Answer along with the

---

[1] Nancy A. Berryhill is now the Acting Commissioner of the Social Security Administration and is substituted in for Acting Commissioner Caroyln W. Colvin in this case. See 42 U.S.C. § 205(g).

1

Administrative Record ("AR"). (Docket Entry Nos. 14-15). The parties filed a Joint Stipulation ("Joint Stip.") on September 6, 2017, setting forth their respective positions regarding Plaintiff's sole claim. (Docket Entry No. 34).

The Court has taken this matter under submission without oral argument. See C.D. Cal. L.R. 7-15; "Order Re: Procedures in Social Security Case," filed February 1, 2016 (Docket Entry No. 9).

**BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION**

On June 28, 2012, Plaintiff filed an application for Supplemental Security Income, alleging a disability since October 1, 1999. (AR 158-78).

On March 26, 2014, the Administrative Law Judge ("ALJ"), James Nguyen, heard testimony from Plaintiff (who was represented by counsel) and vocational expert Sandra Fioretti. (See AR 37-62). On July 3, 2014, the ALJ issued a decision denying Plaintiff's application. (See AR 23-31). After determining that Plaintiff had severe impairments -- "chronic kidney disease, degenerative joint disease in the right hip, lumbar spine degeneration, tendinitis in the right knee, hypertension, diabetes mellitus, dyslipidemia, hepatitis C, and adjustment disorder

with anxiety (AR 25)[2] -- but did not have an impairment or combination of impairments that met or medically equaled the severity of one of the Listed Impairments (AR 25-26), the ALJ found that Plaintiff had the residual functional capacity ("RFC")[3] to perform light work[4] with the following limitations: can stand/walk 4 hours during an 8-hour workday; can occasionally climb ramps and stairs, but can never climb ladders, ropes and scaffolds; can occasionally balance, stoop, kneel, crouch and crawl; should avoid concentrated exposure to vibration and should avoid working around unprotected heights; requires use of a cane for ambulation if walking more than 250 feet away from the workstation; can understand, remember and carry out simple job instructions, can maintain attention and concentration to perform simple, routine and repetitive tasks; can have frequent interation with coworkers, supervisors, and the general public; and can work in an environment with occasional changes to the work setting and with occasional work-related decision making. (AR 26-30). The ALJ then determined that Plaintiff did not have any past relevant work (AR 30), but that jobs existed in significant numbers in the national economy that Plaintiff can perform, and therefore found that Plaintiff was not disabled within the meaning of the Social Security Act. (AR 30-31).

---

[2] The ALJ found that Plaintiff's history of polysubstance abuse was a nonsevere impairment. (AR 25).

[3] A Residual Functional Capacity is what a claimant can still do despite existing exertional and nonexertional limitations. See 20 C.F.R. § 416.945(a)(1).

[4] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 416.967(c).

3

Plaintiff requested that the Appeals Council review the ALJ's decision. (See AR 18). The request was denied on December 9, 2015. (See AR 1-6). The ALJ's decision then became the final decision of the Commissioner, allowing this Court to review the decision. See 42 U.S.C. §§ 405(g), 1383(c).

**PLAINTIFF'S CONTENTIONS**

Plaintiff solely alleges that the ALJ failed to properly assess Plaintiff's credibility. (See Joint Stip. at 5-16, 26).

**DISCUSSION**

After consideration of the record as a whole, the Court finds that Plaintiff's claim of error warrants a remand for further consideration.

**A. The ALJ Did Not Properly Assess Plaintiff's Credibility**

Plaintiff asserts that the ALJ did not provide clear and convincing reasons for finding that Plaintiff's testimony about his symptoms was not credible. (See Joint Stip. at 5-16, 26). Defendant asserts that the ALJ provided valid reasons for finding Plaintiff not fully credible. (See Joint Stip. at 16-26).

Plaintiff made the following statements in a "Function Report - Adult" dated August 19, 2012 (see AR 198-205):

He lives with family in an apartment. He does not take care of pets. With respect to his daily activities, he wakes up, prays for a good day, checks on his mother who has Alzheimer's, takes his medication, eats breakfast, watches television until noon, feeds his mother, tries to rest, watches televsion, eats dinner, and then goes to bed. (See AR 198-99).

As a result of his impairments, he no longer is able to work, enjoy himself, and be around other people. His impairments affect his sleep (he cannot sleep well at night). His impairments affect his abilities to use the toilet (he is always constipated). He needs special reminders (post-it notes) to take care of personal needs and grooming, and he needs reminders (a pill box) to take medicine. (See AR 200).

He prepares his own meals (i.e., sandwiches and frozen dinners) on a daily and sometimes weekly basis (which takes him 30 minutes to 2 hours). His impairments have changed his cooking habits, since he does not feel well and has problems concentrating. His househould chores are cleaning and laundry which takes him 2 hours every 2 weeks. He needs someone to

help him do his household chores. He goes outside alone five times a day; he either drives or rides in a car. He shops in stores for food, two times a month (3 hours). He is able to pay bills. (See AR 200-02).

His hobbies and interests are watching television and working. He no longer works because he cannot stand on his leg for an extended period of time. He does not spend time with others. He regularly goes to church on Sundays. He has problems getting along with others (talking to people) because he has a short temper and others get on his nerves. (See AR 202-03).

His impairments affect his lifting, squatting, bending, standing, reaching, walking, kneeling, talking, seeing, completing tasks and getting along with others. He can lift 50 pounds. He can walk for 30 to 60 minutes before he has to rest, and then must rest for 2 hours before he can resume walking. He does not know for how long he can pay atteniotn, whether he finishes what he starts, how well he follows instructions (he tries to follow spoken instructions), or how well he gets along with authority figures. He has never been fired or laid off from a job because of problems getting along with other people. He handles stress "the best [he] can", and does not handle changes in routine well. He has unusual

behaviors/fears, specifically, he panics and is afraid to talk to people. Most of the time he uses a cane which was prescribed in 2006. (See AR 203-04).

Plaintiff testified at the March 26, 2014 administrative hearing as follows (see AR 39-57):

He completed tenth grade; he did not get a GED (he went to trade school). He lives with his younger son who is 19 years old and is looking for work and going to start college. He last worked in 1999. He has a dog who stays inside with him (he does not walk the dog). He cannot work a full-time job (even with alternate sitting and standing) because of the chronic pain in his hip, knee and calves. Even though he can alternate sitting and standing for 3 or 4 hours, he would be in great pain if he worked a job (i.e., packing boxes) for just 3 to 4 hours. He is in pain if he walks or stands for about 10 minutes. His chronic anxiety makes him afraid to go outside sometimes and makes him nervous, stressed out, and not wanting to be around people on a daily basis. (See AR 39-41, 47-49, 52-57).

For his right hip (one ball joint is big, and causes "constipation like type pain"), he has received chiropractic treatment and pain medication (gabepentine and 30 mg

methadone). The pain medication helps, but "not all the way" (he always is hurting). He wants to stop taking methadone because it makes him feel tired. His chiropractor wrote that he might need a total hip replacement, but he has not yet seen an orthopedic surgeon because of problems with his insurance. For his knee (one leg is bigger than the other), he has received chiropractic treatment. For his back, he has received chiropractic treatment and nerve stimulation. He has never received any injections for his back. For his diabetes, he takes insulin in the morning and at night, which helps control his blood sugar levels. He takes three medications for his high blood pressure. Although he was offered medication (Interferon) for his hepatitis, he refused it because he was already on so many medications that did not make him feel well. He has seen a psychiatrist three times for chronic anxiety and depression. For anxiety he takes Xanax (he has taken Xanax for one or two years), which does not really help, and the doctor does not want him to take it because of its addictive nature. One doctor thought he had prostate cancer, but it was only a prostate infection which he had for three months. (See AR 42-51).

He has a history of using cocaine and heroin, and he used methamphetamine for a short period. He currently is in a methadone program for his heroin addiction (he has been in the

program for about 1 1/2 years), and he was in a methadone program about 7 years ago. (See AR 41-42, 48, 50-51).

When asked about what things he does around the house, he testified he usually spends most of the time in bed watching television because of his hip pain. He goes to the kitchen, makes a sandwich, returns to his room, eats the sandwich, and lies down again. His son does most of the housework. He spends most of the day lying down on his left side with his leg on a pillow, which takes the weight off his right side. When he sits in a chair, he leans on his left side and lifts his right side up off the chair (preventing the free use of both his hands), which takes the weight off his right side. He needs to use a cane if he walks a "long distance" (around 10 minutes). He is able to walk about 250 feet (from the parking lot to the location of the administrative hearing) without the use of his cane. He is able to go to the store, but it causes him anxiety. (See AR 40-41, 52-54, 56).

After discussing Plaintiff's testimony (see AR 27), the ALJ addressed Plaintiff's credibility as follows:

After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged

symptoms; however, the claimant's statments concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision. (AR 28).

After discussing the medical evidence, including records from Desert Valley Hospital, Dr. Mikes Victorville Clinic, McKee Family Health Clinic, Life Chiropractic Center, a consultative examiner's report, and a psychiatric consultative examiner's report (see AR 28-30), the ALJ stated:

> The medical record, as highlighted above, casts doubt on the credibility of the claimant's allegations of disability. More specifically, the claimant has not sought the type of treatment one would expect of a totally disabled individual. In fact, the available medical record is remarkably sparse, and what few treatment records are available consist of little more than medication monitoring appointments. (AR 29).

A claimant initially must produce objective medical evidence establishing a medical impairment reasonably likely to be the cause of the subjective symptoms. Smolen v. Chater, 80 F.3d 1273, 1281 (9th Cir. 1996); Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir. 1991). Once a claimant produces objective medical evidence of an underlying impairment that could reasonably be expected to produce the pain or other symptoms

alleged, and there is no evidence of malingering, the ALJ may reject the claimant's testimony regarding the severity of his or her pain and symptoms only by articulating specific, clear and convincing reasons for doing so. Brown-Hunter v. Colvin, 798 F.3d 749, 755 (9th Cir. 2015)(citing Lingenfelter v. Astrue, 504 F.3d 1028, 1036 (9th Cir. 2007)); see also Smolen, supra; Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998); Light v. Social Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997). Because the ALJ does not cite to any evidence in the record of malingering, the "clear and convincing" standard stated above applies.

Here, the ALJ failed to provide clear and convincing reasons for finding that Plaintiff's testimony about the intensity, persistence and limiting effects of his symptoms was not entirely credible.[5]

First, the ALJ failed to "specifically identify 'what testimony is not credible and what evidence undermines [Plaintiff's] complaints.'" Parra v. Astrue, 481 F.3d 742, 750 (9th Cir. 2007) (quoting Lester v.

---

[5] The Court will not consider reasons for finding Plaintiff not entirely credible (see Joint Stip. at 17-23, i.e., level or frequency of treatment, lack of treatment, routine and conservative medical treatment, Plaintiff's reported improvement with treatment, Plaintiff's inability to work for reasons other than a medical impairment, specific objective medical evidence [including medical opinions] undermining Plaintiff's complaints, Plaintiff's daily activities) that were not given by the ALJ in the Decision. See Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003)("We are constrained to review the reasons the ALJ asserts."; citing SEC v. Chenery Corp., 332 U.S. 194, 196 (1947), Pinto v. Massanari, 249 F.3d 840, 847-48 (9th Cir. 2001)); and Garrison v. Colvin, 759 F.3d 995, 1010 (9th Cir. 2014)("We review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely.").

11

Chater, 81 F.3d 821, 834 (9th Cir. 1995)); see also Smolen, 80 F.3d at 1284 ("The ALJ must state specifically what symptom testimony is not credible and what facts in the record lead to that conclusion").

Second, the ALJ's determination that Plaintiff's testimony was not fully supported by the medical evidence was an insufficient reason for finding Plaintiff less than fully credible with respect to his testimony about the severity of his physical and mental impairments. Once a claimant demonstrates medical evidence of an underlying impairment, "an ALJ 'may not disregard [a claimant's testimony] solely because it is not substantiated affirmatively by objective medical evidence.'" Trevizo v. Berryhill, 862 F.3d 987, 1001 (9th Cir. 2017)(quoting Robbins v. Soc. Sec. Admin., 466 F.3d 880, 883 (9th Cir. 2006)).

Third, the ALJ's partial discrediting of Plaintiff's testimony because Plaintiff "has not sought the type of treatment one would expect of a totally disabled individual" was improper, because the ALJ did not ask Plaintiff why he did not seek different or more medical treatment. See Social Security Ruling 96-7p (". . . [I]f the frequency or extent of the treatment sought by an individual is not comparable with the degree of the individual's subjective complaints, or if the individual fails to follow prescribed treatment that might improve symptoms, we may find the alleged intensity and persistence of an individual's symptoms are inconsistent with the overall evidence of record. We will not find an individual's symptoms inconsistent with the evidence in the record on

this basis without considering possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints.  We may need to contact the individual regarding the lack of treatment or, at an administrative proceeding, ask why he or she has not complied with or sought treatment in a manner consistent with his or her complaints."). Plaintiff's failure to seek more medical treatment may have been the result of his financial issues (see AR 49 [At the hearing, Plaintiff testified he had issues with his insurance]). See Smolen, supra ("Where a claimant provides evidence of a good reason for not taking medication for her symptoms [such as Plaintiff's testimony that "she had not sought treatment (and therefore was not taking medication) for her chronic fatigue and pain because, as a result of not being able to maintain a job, she had no insurance and could not afford treatment"], her symptom testimony cannot be rejected for not doing so."); see also Regennitter v. Commissioner of Soc. Sec. Admin., 166 F.3d 1294, 1297 (9th Cir. 1998)(". . . [W]e have proscribed the rejection of a claimant's complaints for lack of treatment when the record establishes that the claimant could not afford it[.]"); Gamble v. Chater, 68 F.3d 319, 322 (9th Cir. 1995)("It flies in the face of the patent purposes of the Social Security Act to deny benefits to someone because he is too poor to obtain medical treatment that may help him.")(quoting Gordon v. Schweiker, 725 F.2d 231, 237 (4th Cir. 1984)).

Fourth, to the extent the ALJ partially discredited Plaintiff's testimony based on the conservative nature of his treatments, the ALJ's

13

reason was not clear and convincing.  Evidence of conservative treatment may be considered in a credibility determination.  <u>Parra v. Astrue</u>, 481 F.3d 742, 750-51 (9th Cir. 2007) ("[E]vidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment[.]").  However, the ALJ has failed to show that Plaintiff only obtained a conservative course of treatment for his impairments.  See <u>Childress v. Colvin</u>, 2014 WL 4629593, *12 (N.D. Cal. Sept. 16, 2014) ("There is no guiding authority on what exactly constitutes 'conservative' or 'routine' treatment."); <u>Boitnott v. Colvin</u>, 2016 WL 362348, *4 (S.D. Cal. January 29, 2016) (explaining that "[t]here was no medical testimony at the hearing or documentation in the medical record that the prescribed medication constituted 'conservative' treatment of [the plaintiff's] conditions," and that the ALJ "was not qualified to draw his own inference regarding whether more aggressive courses of treatments were available for Plaintiff's conditions").  At the hearing, the ALJ did not ask Plaintiff why the treatments for his impairments were conservative, or why he had not obtained other kinds of treatments for his impairments.

Fifth, to the extent that the ALJ relied on the sparseness of the medical record to partially discredit Plaintiff's testimony, the ALJ's reason was not clear and convincing.  The ALJ failed to state how a sparse medical record rendered Plaintiff's testimony about his pain and symptoms less than fully credible.  See <u>Moisa v. Barnhart</u>, 367 F.3d 882, 884 (9th Cir. 2004)(. . . [T]he ALJ . . . made no findings that would

14

allow us to conclude that he rejected the testimony on permissible grounds, such as reputation for dishonesty, conflicts betwen the claimant's testimony, or internal contradictions in the testimony.").

**B.   Remand Is Warranted**

The decision whether to remand for further proceedings or order an immediate award of benefits is within the district court's discretion. Harman v. Apfel, 211 F.3d 1172, 1175-78 (9th Cir. 2000). Where no useful purpose would be served by further administrative proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits. Id. at 1179 ("[T]he decision of whether to remand for further proceedings turns upon the likely utility of such proceedings."). However, where, as here, the circumstances of the case suggest that further administrative review could remedy the Commissioner's errors, remand is appropriate. McLeod v. Astrue, 640 F.3d 881, 888 (9th Cir. 2011); Harman v. Apfel, supra, 211 F.3d at 1179-81.

Since the ALJ failed to properly assess Plaintiff's credibility, remand is appropriate. Because outstanding issues must be resolved before a determination of disability can be made, and "when the record as a whole creates serious doubt as to whether the [Plaintiff] is, in fact, disabled within the meaning of the Social Security Act," further administrative proceedings would serve a useful purpose and remedy

15

defects. <u>Burrell v. Colvin</u>, 775 F.3d 1133, 1141 (9th Cir. 2014)(citations omitted).

**ORDER**

For the foregoing reasons, the decision of the Commissioner is reversed, and the matter is remanded for further proceedings pursuant to Sentence 4 of 42 U.S.C. § 405(g).

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED: October 10, 2017

/s/
ALKA SAGAR
UNITED STATES MAGISTRATE JUDGE

16